**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| United States of America, ex rel., | ) | |
| DAVID HUGHES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 09 C 6247 |
| v. | ) | |
| | ) | |
| GUY D. PIERCE, Warden, Pontiac | ) | |
| Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

On October 2, 2009, pro se Petitioner David Hughes filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). Before the Court is Respondent's motion to dismiss Hughes' habeas petition as untimely. *See* 28 U.S.C. § 2244(d)(1). In response to Respondent's motion to dismiss, Hughes maintains that the statutory tolling provision pursuant to 28 U.S.C. § 2244(d)(1)(B) applies to his case due to a state-created impediment that violated his constitutional rights. On March 16, 2010, the Court appointed counsel for Hughes and on February 10 and 11, 2011, the Court conducted an evidentiary hearing due to the fact-intensive questions relating to Hughes' state-created impediment claim. In light of the testimony and documentary evidence, along with the Court's credibility determinations, the Court grants Respondent's motion and dismisses Hughes' habeas petition as untimely. The Court also declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

### BACKGROUND

On July 21, 1997, in the Circuit Court of Cook County, Illinois, Hughes pleaded guilty to

felony murder, residential burglary, robbery, and concealment of a homicidal death. On July 25, 1997, the Circuit Court entered judgment and sentenced Hughes to a term of natural life imprisonment for felony murder and concurrent prison terms of fifteen, seven, and five years on the remaining counts, respectively. On November 2, 1998, Hughes mailed to the Illinois Appellate Court a motion for leave to file a "Late Notice of Appeal" and for the appointment of counsel. The Illinois Appellate Court denied Hughes' motion on November 25, 1998.

On February 23, 1999, Hughes filed a pro se post-conviction petition pursuant to 725 ILCS 5/122-1, *et seq.*, in the Circuit Court of Cook County. Thereafter, Hughes supplemented and amended his post-conviction petition several times. On February 8, 2007, the Circuit Court vacated Hughes' conviction and sentence on the robbery charge, but dismissed the remainder of his post-conviction claims. The Illinois Appellate Court affirmed the Circuit Court's post-conviction ruling on March 17, 2009. Hughes then filed a petition for leave to appeal ("PLA") that the Supreme Court of Illinois denied on September 30, 2009. Hughes did not file a petition for a writ of certiorari with the United States Supreme Court.

On October 2, 2009, Hughes filed the present pro se habeas petition pursuant to 28 U.S.C. § 2254(d). Construing his pro se petition liberally, *see Ward v. Jenkins,* 613 F.3d 692, 697 (7th Cir. 2010), Hughes brings the following claims: (1) he pleaded guilty under the mistaken belief that he was eligible for the death penalty; (2) his trial counsel was constitutionally ineffective for advising him to enter a guilty plea on the basis that he faced the death penalty; (3) his trial counsel was constitutionally ineffective for failing to file a motion to withdraw his guilty plea; and (4) the trial court erred in finding him eligible for the death penalty on the basis of his commission of a felony murder.

2

## LEGAL STANDARD

"AEDPA establishes a 1-year period of limitation for a state prisoner to file a federal application for a writ of habeas corpus." *Wall v. Kholi*, ___ U.S. ___, 131 S.Ct. 1278, 2011 WL 767700, at *4 (Mar. 7, 2011) (citing 28 U.S.C. § 2244(d)(1)(A)); *see also Griffith v. Rednour*, 614 F.3d 328, 329 (7th Cir. 2010). "This period runs 'from the latest of' four specified dates, including":

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Wall*, ___ U.S. ___, 131 S.Ct. 1278, 2011 WL 767700, at *4 (quoting 28 U.S.C. § 2244(d)(1)(A)-(D)).

## ANALYSIS

**I.     Timeliness Analysis**

The Court first turns to the date upon which Hughes' judgment became final under 28 U.S.C. § 2244(a)(1)(A) as a starting point. *See Griffith,* 614 F.3d at 320. Hughes' conviction became final on August 24, 1997, which was 30 days after the Circuit Court of Cook County entered judgment on Hughes' guilty plea and sentenced him. *See* Ill.S.Ct.R. 604(d). Under Illinois Supreme Court Rule 604(d):

3

> No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment. No appeal shall be taken upon a negotiated plea of guilty challenging the sentence as excessive unless the defendant, within 30 days of the imposition of sentence, files a motion to withdraw the plea of guilty and vacate the judgment.

210 Ill.2d. R. 604(d); *see also People ex rel. Alvarez v. Skryd*, 241 Ill.2d 34, ___ N.E.2d ___, 2011 WL 329333, at *3 (Ill. Feb. 3, 2011) ("Rule 604(d) establishes a condition precedent for an appeal from a defendant's plea of guilty.") (citation omitted).

Thus, to perfect his appellate rights, Hughes had 30 days from the day the Circuit Court of Cook County entered judgment on July 25, 1997 to file a motion to withdraw his guilty plea. *See People v. Green,* 375 Ill.App.3d 1049, 1053, 314 Ill.Dec. 570, 874 N.E.2d 935 (Ill.App.Ct. 2007) ("defendant's failure to follow Rule 604(d) by moving to withdraw his guilty plea and vacate the judgment subjected him to the consequence actually specified by the rule – the loss of his right to appeal the judgment."). Meanwhile, at his sentencing hearing on July 25, 1997, the Circuit Court informed Hughes that he was required to file a motion to withdraw his guilty plea within 30 days of the judgment's entry and that if he failed to do so, he would forfeit his right to appeal. (R. 13-1, Ex. G, Feb. 8, 2007 Order, at 12.) Hughes failed to file any such motion and the Illinois Appellate Court rejected Hughes' attempt to file a late notice of appeal in November 1998.

Accordingly, the present habeas petition's limitations period began to run on August 24, 1997, and thus Hughes had one year from that date, namely, August 25, 1998, to file a timely habeas petition with the Court. *See* Fed.R.Civ.P. 6(a)(1)(A) ("exclude the day of the event that triggers the period"). Hughes' motion for leave to file a "Late Notice of Appeal" on November

4

2, 1998 did not toll or reset the limitations period because "the possibility that a state court may reopen direct review 'does not render convictions and sentences that are no longer subject to direct review nonfinal.'" *Jimenez v. Quarterman,* 555, U.S. 113, 129 S.Ct. 681, 686 n.4, 172 L.Ed.2d 475 (2009) (quoting *Beard v. Banks,* 542 U.S. 406, 412, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004)). Moreover, Hughes' Illinois post-conviction petition that he filed approximately six months after the habeas limitations period expired did not toll or reset the limitations period. *See DeJesus v. Acevedo,* 567 F.3d 941, 943 (7th Cir. 2009) ("a state proceeding that does not begin until the federal year has expired is irrelevant").

Nevertheless, Hughes maintains that the statutory tolling provision pursuant to 28 U.S.C. § 2244(d)(1)(B) applies to his case due to a state-created impediment that violated his constitutional rights. Specifically, Hughes argues that he was denied access to the law library and legal assistance when he was in Stateville Correctional Center's Category IV protective custody from approximately August 8, 1997 through July 14, 1998. Accordingly, Hughes maintains that the limitations period should be tolled until July 15, 1998, the date he was transferred out of Category IV protective custody after which he had access to the Stateville law library. If this were the case, approximately seven months of his one-year limitations period would have run before Hughes filed his Illinois post-conviction petition February 23, 1999, at which point the limitations period would be tolled. *See Griffith,* 623 F.3d at 1167 ("time is tolled for the 'time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.'") (quoting 28 U.S.C. 2244(d)). Thus, the present habeas petition would be timely.

To clarify, Section 2244(d)(1)(B) allows a petitioner to "file a habeas corpus petition

5

within one year from 'the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action.'" *Lloyd v. Van Natta*, 296 F.3d 630, 632-33 (7th Cir. 2002) (quoting 28 U.S.C. § 2244(d)(1)(B)); *see also Moore v. Battaglia*, 476 F.3d 504, 506-07 (7th Cir. 2007). Although the Seventh Circuit has yet to define "impediment" for purposes of this subsection, the court has emphasized that "the plain language of the statute makes clear that whatever constitutes an impediment must *prevent* a prisoner from filing his petition." *Lloyd,* 296 F.3d at 633 (emphasis in original). Whether a state-created impediment prevented a petitioner from filing a habeas petition under Section 2244(d)(1)(B) is a fact-intensive inquiry. *See Pace v. DiGuglielmo,* 544 U.S. 408, 416 n.6, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (Section 2244(d)(1)(B) requires claim by claim consideration). A habeas petitioner has the burden of establishing that the statutory tolling provision applies. *See Jackson v. Secretary for Dep't Corr.,* 292 F.3d 1347, 1349 (11th Cir. 2002); *Strong v. Gaetz,* 07 C 0435, 2009 WL 3060267, at *9 (N.D. Ill. Sep. 21, 2009).

The parties do not dispute that an alleged constitutional violation is at issue. Specifically, the "Constitution protects a prisoner's right of access to the courts; state actors must respect that right by not impeding prisoners' efforts to pursue legal claims." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009). Access to adequate law libraries is one acceptable method of assuring the meaningful access to courts under the Fifth Amendment. *See Bounds v. Smith,* 430 U.S. 817, 830, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *see also Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). The parties do dispute, however, whether Stateville correctional officials denied Hughes' access to the law library during the relevant time period.

6

**II.     Evidentiary Hearing**

At the February 11 and 12, 2011 hearing, Hughes' counsel called the following witnesses: (1) Petitioner David Hughes; (2) Brian Carter, Hughes' cellmate at Stateville during the relevant time period, who was sentenced to sixty years imprisonment for murder; (3) John Markiewicz, a former inmate law clerk at Stateville, who is serving a life sentence for murder; and (4) Christopher Connery, a former general library clerk at Stateville, who is serving a life sentence for murder and concealment of a homicidal death.  Respondent's counsel called the following witnesses: (1) Michael Lewis, an inmate who filed a civil rights lawsuit concerning access to the Stateville law library and who is serving 40 years for aggravated sexual assault; (2) Gary Wintersteen, a retired public service administrator and law librarian at Stateville; (3) Vernette Covin-Russell, a retired unit superintendent for "H House" at Stateville; and (4) Mary Kim Johnson, a retired correctional counselor at Stateville.  During the hearing, the Court evaluated the testimony of each witness and carefully assessed their demeanor and credibility.

At the evidentiary hearing, Hughes testified that upon arrival at Stateville on August 5, 1997, he requested to be housed in protective custody.  In other words, he wanted to be separated from the general prison population.  While Hughes' request was pending, he was housed in Category III protective custody.  After prison personnel denied his request for protective custody, Hughes filed a grievance of this denial during which time he was housed in Category IV protective custody, also known as "PC Kickout."

Respondent presented testimony and documentary evidence at the hearing that upon arrival at Stateville, inmates received an Inmate Handbook that provided general instructions in securing a spot in the "library line."  More specifically, the Inmate Handbook required that

7

inmates were required to sign up in their housing unit before their scheduled visit to get a spot in the library line. Hughes testified that he received and read the Inmate Handbook when he arrived at Stateville in August 1997. (*See also* Tr. Exs. 1, 2.) Moreover, warden bulletins and testimony established that during the relevant time period, Category IV or PC Kickout inmates were scheduled to attend the library every Wednesday, between 8:30 a.m and 11:00 a.m., although according to inmate law clerk John Markiewicz, sometimes this time period was limited by 30 to 45 minutes due to security protocols of getting the inmates to and from the law library. (*See* Tr. Exs. 3A, 3B, 3C.) Also, Johnson testified that warden bulletins were posted all over H House, the housing unit in which Hughes was incarcerated. PC Kickout inmates could also request to go to the library at other times, if necessary. During non-Wednesday visits to the library, the Category IV inmates were separated from non-protective custody inmates.

Wintersteen testified that approximately 30 inmates were allowed in the Stateville library per visit and inmates with legal deadlines had priority over those who wanted to use the library for non-legal purposes, such as reading books, magazines, or newspapers. The testimony of Markiewicz, Wintersteen, and Covin-Russell revealed that paralegals or law clerks – both inmate and civilian – regularly reviewed inmate requests for legal assistance, assessed the seriousness and circumstances of each inmate's legal deadline, and then composed a daily list of inmates for library attendance. Wintersteen testified that prison staff would then deliver the inmate list to the respective housing units the day before the scheduled library visit. Also, to make sure that protective custody inmates were updated about any changes in the library schedule, Covin-Russell, the unit supervisor of H House, provided each inmate with a personal copy of the library list.

Wintersteen also credibly testified that an inmate could get on the list to visit the library through various ways. Inmates, for example, could fill out slips of paper and deposit the requests in a lockbox in their unit that was designated for written library requests. Library staff regularly collected these notes and returned them to the library for the daily library lists. Also, inmates could place requests addressed to the library in the cell's "chuckhole" – a small opening in the door of each cell. Thereafter, prison staff collected these notes and deposited them in the library's mailbox in the administration building. Wintersteen further testified that law clerks would go directly to PC Kickout if inmates needed legal assistance.

Moreover, the unit supervisor at H House, Covin-Russell, also testified that H House used these procedures for library requests. She further testified that inmates could make a library request to their correctional counselors, with whom they met at least once a week, or to the gallery officer assigned to their floor. Furthermore, she testified that the correctional counselors would follow-up on law library requests. Covin-Russell stated that she made regular rounds of the gallery and that during her rounds she was available to hear any complaints regarding library access. An inmate could also file a formal grievance concerning access to the law library as explained in the Inmate Handbook. From their background as career employees of the Illinois Department of Corrections, years of experience, testimony, and demeanor in court, the Court concludes that both Wintersteen and Covin-Russell were highly credible and reliable witnesses. Their credible testimony is also corroborated with documentary evidence.

Meanwhile, there is no documentary evidence in the record that Hughes made any requests to get on the library list except for his June 2, 1998 complaint. (*See, e.g.,* Tr. Ex. 7A.) In fact, the parties stipulated that the Illinois Department of Corrections has no documentation or

9

logs regarding Hughes and the Stateville law library from August 10, 1997 until July 14, 1998. Hughes, however, testified that he sought access to the law library and legal assistance on seven occasions during the relevant time period. Hughes, nonetheless, also admitted that he never filed a grievance about the law library concerning his 1997 and 1998 requests, even though he was aware of the grievance procedure and had filed other grievances, including his protective custody grievance and a medical grievance. Furthermore, Johnson testified that during her weekly visits from September 1997 through December 1997, Hughes never mentioned any trouble about getting to the law library. Also, Hughes' cumulative counseling summary reflects that his only complaint about the law library was his June 2, 1998 complaint. (*See* Tr. Ex. 7A.) After Hughes lodged his June 2, 1998 complaint, his correctional counselor at the time, Sharon Carter, sent a memorandum to the law library about getting Hughes a spot on the library list. Based on Hughes' demeanor, conflicting documentary evidence and testimony, and background, his testimony that he sought access to the law library seven times is not credible.

Hughes' cellmate at Stateville, Brian Carter, also testified at the evidentiary hearing stating that Hughes complained to his correctional counselor over 20 times about the law library, which is contradicted by Hughes' own testimony that he complained seven times. Carter also testified that he filed five or six grievances about access to the law library himself, but his master file contained no such grievances. In addition, Carter testified that he told Hughes that PC Kickout inmates never got to go to the law library, which is directly contradicted by both inmates Markiewicz's and Connery's testimony that PC Kickout inmates had access to the law library and legal help. Also, Lewis testified that he went to the law library approximately once a month while incarcerated in PC Kickout when he was pursuing his civil rights lawsuit. Based on

Carter's background, demeanor, and testimony, the Court concludes that his testimony on this issue is not credible and certainly does not overcome the highly credible testimony of Wintersteen and Covin-Russell about PC Kickout inmates' access to the law library.

Meanwhile, the parties stipulated that between August 1997 and July 1998, H House was on lock-down for a total of 19 days, and that four of those lock-down days occurred on a Wednesday – the day on which Category IV inmates were scheduled to visit the library. Wintersteen testified that during lock-downs, paralegals or law clerks were assigned to visit the cell houses and inquire whether any inmates needed legal assistance. Based on the parties' stipulation and Wintersteen's testimony, the lock-downs during the relevant time period were insignificant compared to the amount of time between August 1997 and July 1998 that Hughes could have requested access to the law library.

In sum, under the state-created impediment statutory tolling provision, the impediment must prevent a prisoner from pursuing his habeas claim. From the record before the Court, Hughes has failed to set forth credible evidence that Stateville correctional employees and officials prevented him from accessing the law library during the time period of August 8, 1997 through July 14, 1998. *See Moore,* 476 F.3d at 506-07; *Lloyd,* 296 F.3d at 633; *see also Holland v. Florida,* ___ U.S. ___, 130 S.Ct. 2549, 2571, 177 L.Ed 130 (2010). Because Hughes has not established that a state-created impediment prevented him from access to the Stateville law library, the Court grants Respondent's motion to dismiss Hughes' habeas petition as untimely.

### III. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a

final order adverse to the applicant." Accordingly, the Court must determine whether to grant Hughes a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order. A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Sandoval v. United States,* 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El,* 537 U.S. at 336; *Evans v. Circuit Court of Cook County, Ill.,* 569 F.3d 665, 667 (7th Cir. 2009).

As the Seventh Circuit has repeatedly held "[w]hether a given petition is timely is a question under § 2244, not under the Constitution, and therefore an error in treating a collateral attack as untimely is not enough to support a certificate of appealability." *Owens v. Boyd,* 235 F.3d 356, 358 (7th Cir. 2000) (collecting cases). Even if the Court were to consider Hughes' statutory tolling argument that he was denied his Fifth Amendment right to meaningful access to the courts as a stand alone constitutional claim, the Court would be hard-pressed to conclude that jurists of reason would find the Court's decision that Hughes had access to the Stateville law library debatable or wrong. *See Miller-El*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Therefore, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court grants Respondent's motion to dismiss Hughes' habeas petition as untimely. The Court further declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Dated:** April 19, 2011

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**